UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES CUMMINGS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | Civil No. 05-206-P-C |
| v. | ) | |
| | ) | |
| WESTPORT INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON
MOTION FOR JUDGMENT ON THE PLEADING**

James Cummings filed an action in state court seeking to recover damages from
Westport Insurance Company after he obtained a judgment against his former attorney
Michael Waxman for malpractice.  Waxman did not plead a state law count of battery
when he represented Cummings in a civil suit seeking damages for an incident in which a
police officer pushed Cummings.  The current complaint has one count which is framed
as a "reach and apply" action under 24-A M.R.S.A. § 2904 (2005).  Westport removed
the action to this Court and has filed a motion for judgment on the pleadings.  (Docket
No. 15.)  It argues that Attorney Waxman's alleged malpractice resulted solely in
economic damage to Cummings and is therefore not properly the subject of an action
brought pursuant to § 2904.  I recommend that the Court **GRANT** the motion.

**Background**

Westport presses its motion pursuant to Federal Rule of Civil Procedure 12(c).

Therefore the record consists of the well-pleaded allegations of the complaint, which

must be taken as true.  Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005).

The material allegations of the complaint reflect that Cummings retained Attorney

Michael Waxman to represent him in a lawsuit after a Portland police officer forcefully

shoved Cummings to the ground, without reasonable cause to do so, causing him serious

personal injury.  Attorney Waxman pursued a civil rights action against the officer, his

police chief and the City of Portland, without asserting a state law claim for battery.  The

civil rights claims succumbed to summary judgment.  Following a further loss on appeal,

Cummings notified Waxman of his intent to pursue a claim against Waxman for legal

malpractice, of which Waxman notified his malpractice insurer, Westport Insurance

Company.  Westport denied Waxman any defense or indemnification under his policy.

Cummings filed suit against Waxman in state court and obtained a judgment of $1.25

million.  Cummings thereupon filed suit against Westport under Maine's reach and apply

statute, seeking to obtain payment of the judgment by Westport.

Westport timely removed the reach and apply action to this Court on the basis of

diversity jurisdiction and moved to dismiss the action on the legal ground that Maine's

reach and apply statute does not authorize a judgment creditor to bring a direct action

against a tortfeasor's insurer when the underlying cause of action is for legal malpractice.

(First Mot. for J., Docket No. 15.)

**Discussion**

Maine's "Reach and Apply Statute" authorizes a judgment creditor to pursue a direct action against a judgment debtor's insurer under certain circumstances, the parameters of which are set forth in sections 2903 and 2904 of Title 24-A of the Maine Revised Statutes. Pursuant to section 2904:

> Whenever any person, administrator, executor, [or] guardian, recovers a final judgment against any other person for any loss or damage specified in section 2903, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a civil action, in his own name, against the insurer to reach and apply the insurance money, if when the right of action accrued, the judgment debtor was insured against such liability and if before the recovery of the judgment the insurer had had notice of such accident, injury or damage.

24-A M.R.S.A. § 2904. Section 2903 reads:

> The liability of every insurer which insures any person against accidental loss or damage *on account of personal injury or death or on account of accidental damage to property* shall become absolute whenever such loss or damage, for which the insured is responsible, occurs. The rendition of a final judgment against the insured for such loss or damage shall not be a condition precedent to the right or obligation of the insurer to make payment on account of such loss or damage.

Id. § 2903 (emphasis added).

Westport contends that Cummings's reach and apply action is not authorized by the Reach and Apply Statute because, essentially, Waxman's insurance policy did not "insure against accidental loss or damage on account of personal injury or . . . accidental damage to property," and because the economic loss occasioned by losing a cause of action through legal malpractice is neither a personal injury nor damage to property. (First Mot. for J. at 2-3.) Cummings riposte consists of an impressive theorem:

3

1.   A "chose in action" is a property right.  Moulton v. Moulton, 485
     A.2d 976, 978 (Me. 1984)("choses in action . . . are classifiable as
     intangible personal property" subject to division in a divorce
     proceeding).

2.   "Maine's *reach and apply'* statute is available under any policy of
     casualty insurance and is not confined to automobile liability
     insurance policies."  Marston v. Merchants Mut. Ins. Co., 319 A.2d
     111, 114 (Me. 1974).

3.   "Casualty insurance includes: . . . [i]nsurance against legal liability
     of the insured, and against loss, damage or expense incidental to a
     claim of such liability . . . arising out of damage to the economic
     interest of any person, as the result of negligence in rendering
     expert, fiduciary or professional service[.]"  24-A M.R.S.A. §
     707(1)(J).

4.   Therefore, the loss of a chose in action due to legal malpractice is a
     form of casualty and falls within the parameters of the "accidental
     damage to property" category.

(Pl.'s Objection at 4-8, Docket No. 22.)  Cummings supplements this theorem with a few

additional observations, including the observation that damages for legal malpractice

could include, for example, emotional distress personal injury damages.  (Id. at 8-9.)  To

that I add that an attorney in charge of a *res* or trust or performing certain services with

regard to intellectual property, for example, might well be liable in negligence for

malpractice that results in "accidental damage to property."

Nevertheless, Westport argues, the concept of "damage to property," which arose

in the context of a statute drafted to address concerns arising out of automobile accident

claims simply does not jibe with a case involving something as intangible as a lost "chose

in action." (Def.'s Reply at 2-3.)  This shift in Westport's reasoning from classifying

Cummings's harm as "economic loss" to classifying what he has lost as "intangible

property" is interesting in itself.  Westport's initial memorandum attempts to highlight the

outlier status of Cumming's action by characterizing Waxman's legal malpractice as

4

having caused only "economic loss" rather than "accidental damage to property." (Id.) Westport's reply memorandum, however, adds some shades of gray by characterizing Waxman's malpractice as having caused only "damage to intangible property." (Def.'s Reply at 2, Docket No. 23.) Reading these two arguments together, it appears that Westport does not contend that the loss of a cause of action due to attorney malpractice is not a kind of "damage" to intangible property, only that it is not the kind of damage to the kind of property that the Legislature had in mind. The problem in this case, of course, is that all of the key words being bandied about (damage, loss, property and casualty) have very broad meanings depending on context. In some contexts damage and loss are largely interchangeable terms. Black's defines damage as "loss or injury" and defines loss, in the insurance context, as the "amount of financial detriment caused by an insured person's death or an insured property's damage." Black's Law Dictionary 416 & 963 (8th ed. 2004). Economic loss, of course, is a species of "damages," and any court might well describe one who suffered such a loss as being "damaged" by some act of a tortfeasor.

The Court's task is to construe the statute in an attempt to give effect to the Legislature's intent. Water Quality Ins. Syndicate, 870 A.2d 121, 123 (Me. 2005). The starting point is to determine "whether the statute's meaning is plain on its face." Id. In Water Quality Insurance, the Law Court did not state whether the "damage to property" language of the Reach and Apply Statute is plain or ambiguous. Instead, it observed that it had already held that the language extends to "any policy of *casualty insurance* and is not confined to automobile liability insurance policies," id. (quoting Marston, 319 A.2d at 114), and that a court must simply inquire whether the casualty loss entails "accidental

loss or damage on account of personal injury or death or on account of accidental damage to property," id. (quoting 24-A M.R.S.A. § 2903).

In Jacques v. American Home Assurance Company, 609 A.2d 719 (Me. 1992), the Law Court held that summary judgment in favor of the insurer should be affirmed where the insurer received no notice of the underlying legal malpractice proceeding prior to the reach and apply action itself.  According to the majority of the Court, in an opinion authored by Chief Justice Wathen, that disposition was required because the provision of notice to the insurer of the underlying claim, prior to its final resolution, was a fundamental, due process requirement.  Id. at 721.  The majority expressly declined to reach the question of "whether the type of injury alleged [--loss of a "wrongful discharge" claim due to the running of the statute of limitation--] falls within the scope of 24-A M.R.S.A. § 2903.  Id. n.2.  Justices Glassman and Roberts, however, asserted in a concurring opinion authored by Justice Glassman, that:

> A chose in action may for some purposes be intangible personal property. I believe, however, that a fair reading of sections 2903 and 2904 must lead to the conclusion that loss due to damage to such intangible property was not intended to be covered by those sections.  Although we have previously stated it is not confined to vehicular insurance policies, Maine's statutory reach and apply law codified at sections 2903 and 2904 was created to meet the proliferation of bodily injury and property damage due to vehicular accidents.  In that context the phrase "damage to property" must necessarily have been intended by the legislature to include only tangible property capable of being damaged in such an "accidental" manner.

Id. at 721-22.  The Glassman-Roberts partial-concurrence, of course, is not binding precedent.  The majority of the Law Court chose to resolve the case on constitutional grounds rather than statutory construction grounds.  The problem I see with the reasoning of the Jacques concurring opinion is that the Law Court expressly held in Marston that

the automobile accident milieu from which the statute arose is *not* determinative of the

scope of the act.  319 A.2d at 114.  Furthermore, the Reach and Apply Statute is found in

a chapter of the Maine Insurance Code entitled "Casualty Insurance Contracts," which the

Code elsewhere defines to include malpractice insurance.  24-A M.R.S.A. § 707(1)(J).

According to the Law Court:

> When we construe a statute, we first look to the plain meaning of the
> language to determine legislative intent.  Only if the language is
> ambiguous do we resort to extrinsic aids to glean the statutory intent.  In
> the absence of a legislative definition, the term must be given a meaning
> consistent with the overall statutory context and must be construed in the
> light of the subject matter, the purpose of the statute and the consequences
> of particular interpretation.  We avoid statutory constructions that create
> absurd, illogical, or inconsistent results.

Brent Leasing Co. v. State Tax Assessor, 773 A.2d 457, 459 (Me. 2001) (citation and

quotation marks omitted).  "The fundamental rule in statutory construction is that words

must be given their plain ordinary meaning."  Mullen v. Liberty Mut. Ins. Co., 589 A.2d

1275, 1277 (Me. 1991).  "[T]hat meaning must be consistent with the overall statutory

context and must be construed in the light of the subject matter, the purpose of the statute

and the consequences of a particular interpretation."  State v. Ray, 741 A.2d 455, 457

(Me. 1999).  "[L]egislation will be construed to avoid, if possible, an unreasonable

result."  Nat'l Council on Compensation Ins. v. Superintendent of Ins., 481 A.2d 775, 779

(Me. 1984).

I consider whether one who reads the Reach and Apply Statute with a mind to the

fact that it is situated within the Maine Insurance Code chapter governing casualty

insurance contracts generally and with a mind to the fact that the relevant legislative

definition of casualty insurance includes malpractice insurance,[1] and without having knowledge of the historical context of the statute, would naturally conclude that the negligent loss of a chose in action is covered by the phrase "accidental damage to property." I conclude that a reader would not naturally draw this conclusion because it requires no small degree of abstract or even abstruse reasoning to transform "negligent loss of a chose in action" into "accidental damage to property" and, therefore, I conclude that the construction advocated by Cummings lies outside the plain and ordinary meaning of the words selected by the Legislature.

Although I do not believe that the Legislature's unqualified use of the word "property" should ordinarily be interpreted to mean only tangible property, I do think that the Legislature's specific use of the word "damage" in the context of the phrase "damage to property" conveys the meaning of physical damage to tangible property, as noted in the Glassman partial-concurrence. In particular, I am struck that the Legislature more than once referred to "loss or damage," suggesting an understanding that the terms have potentially different parameters in the insurance context, but nevertheless chose, in the pivotal phrase, to refer only to "damage to property," not "loss of or damage to property." By disconnecting the concept of loss from this pivotal phrase, the Legislature narrowed the focus of the Reach and Apply Statute to claims made on account of "personal injury or death or on account of accidental damage to property," not on account of economic loss arising from negligent failure to plead a chose in action or cause of action.

Despite the construction I give to the Statute, I do not mean to suggest that I find Cummings's proposed construction at all absurd or even likely to lead to unworkable

---

[1]     Note that, aside from the Title of the chapter in which it appears, the Reach and Apply Statute does not use the term "casualty insurance" in any of its provisions.

consequences, although the proposed construction may have some ramifications in terms of premium costs.   It is just that pegging "loss of a chose in action" into the "damage to property" hole requires an exercise of intellectual abstraction that strays beyond the plain ordinary meaning of the language at issue.[2]  I also believe that this legal issue could appropriately be certified to the Law Court.  Three justices of that Court evidently considered Justice Glassman's construction of the Reach and Apply Statute, now essentially adopted by me, to be problematic enough that they preferred to resolve Jacques on due process grounds.  The line between plain meaning and ambiguity might be considered, by some, to be blurred under the circumstances of this case.  As I have indicated, the pivotal terms "damage" and "property" involve, at least in legal parlance, rather expansive concepts.  If the Law Court were to conclude that the scope of the Reach and Apply Statute is ambiguous under the circumstances or in light of the gloss that their precedent places on the Statute, that determination would potentially open the door to a more nuanced consideration of public policy that is more appropriately addressed by the Law Court rather than this Court.[3]  Certification of the question to the Law Court in the

---

[2]      Justice Glassman cited Johnson Controls, Inc. v. Bowes, 409 N.E.2d 185 (Mass. 1980), in her concurring opinion in Jacques.  What is notable about Johnson Controls is that the Supreme Judicial Court of Massachusetts assumed without any discussion that a legal malpractice claim could not be brought in a direct action against the malpractice insurer under a statute that, like the Maine Reach and Apply Statute, utilized the same "damage to property" language.  Id. at 186 & n.3.

[3]      In unrelated filings regarding the future course of discovery (See Docket No. 17), Cummings rather convincingly argues that since this complaint is a "direct action" under the Reach and Apply Statute, the only defenses available to Westport are those enumerated in the statute.  By failing to defend this action, Cummings argues, Westport has forfeited all but the statutory defenses regarding the reasonableness of the damages awarded by the Superior Court following hearing.  In a legal malpractice case, made more complex because of the plaintiff's need to prevail on the case within the case and the professional dynamics of the attorney client relationship, there may well be policy reasons why both the Legislature and the Law Court would want to limit recovery against insurers to common law remedies under the contract of insurance rather than a statutory reach and apply action.  I do not pretend to have considered or made a determination concerning those policy implications.  I am simply trying to read the statute according to the plain and ordinary meaning of the statutory language.

context of the instant motion or at a latter juncture in the proceedings[4] would comport with Rule 25 of the Maine Rules of Appellate Procedure because it presents a "question of [Maine] law . . . which may be determinative of the cause and . . . there are no clear controlling precedents in the decisions of the Supreme Judicial Court sitting as the Law Court."

## Conclusion

For the reasons set forth above, I **RECOMMEND** that the Court **GRANT** the motion or, in the alternative, reserve judgment pending certification of the question to the Law Court.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

February 21, 2006.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

---

[4]     In the event the Court disagrees with this recommendation and denies the motion to dismiss or determines that it is inappropriate to certify the question to the Law Court at this juncture, the court might still want to leave open the possibility of certifying the question to the Law Court at a later stage of these proceedings.  Following discovery it appears highly likely that there will be another round of dispositive motions raising other potentially unresolved state law statutory construction questions.